Argued December 4, 1975, affirmed January 29, 1976

ENGESETHER, *Respondent,*

*v.*

BAUNACH, *Appellant.*

545 P2d 110

*Walter D. Alley,* Portland, argued the cause for appellant. With him on the brief was Robert G. Chidester, Portland.

*William E. Hanson* of Dardano, Mowry & Hanson, Portland, filed a brief for respondent.

Before McAllister, Presiding Justice, and Holman, Tongue, Howell, and Bryson, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff-payee brought this action to enforce payment of a promissory note executed by defendant-maker in the amount of $2,500. Defendant admits the execution and delivery of the note but affirmatively alleges that plaintiff failed to perform all conditions precedent to payment and that there was a failure of consideration for said note.

Trial was before the court sitting without a jury. The court entered judgment in favor of plaintiff, and the defendant appeals. The defendant contends that there is no substantial evidence to support the trial court's findings.

We view the facts in a light most favorable to plaintiff. Both plaintiff and defendant are experienced real estate and property businessmen. On March 26, 1973, plaintiff entered into an agreement with W. and Adelaide B. Newton to purchase a multiple dwelling lot situated in Portland, Oregon, for the sum of $36,000. Plaintiff paid the Newtons $500 as earnest money and agreed to pay the balance as follows: $9,500 to be paid upon delivery of a deed and the balance to be paid in three equal annual installments. We refer to this transaction as the "Newton contract."

Defendant was building an apartment house in Clackamas County and the plaintiff was performing some of the construction work thereon. Following a conversation between the parties regarding the building site described in the Newton contract, defendant expressed a desire to purchase the building site from plaintiff. Plaintiff testified:

"A   Well, Jack [defendant] mentioned that he was interested in some land across the street, and I told him that I had an 18-unit lot that I had the financing and building permits almost ready on. If he was interested he could take it over for what I had in it.

"* * * * *.

"A   Well when I made the deal with Jack I asked him for my costs of what I had in the plan, my plans and my

$500, which came to 3,000 and my other little expenses plus about 500 for running around which he agreed to pay me for at the time that we made the deal."

Defendant agreed to plaintiff's terms and prepared the earnest money contract which the parties executed on October 20, 1973. The purchase price was $38,500,[1] and defendant gave plaintiff the promissory note in the amount of $2,500 as earnest money, which is the subject of this litigation. Defendant further agreed to pay plaintiff $10,000 upon delivery of a deed to the property and to assume plaintiff's obligations under the Newton contract. The earnest money agreement also contained a provision stating:

"* * * The 2500.00 Note To be Redeemed when Seller [plaintiff] Closes deal with Newton * * *."

We refer to this transaction as the "Baunach-Engesether contract."

A few days later it was decided that the entire transaction could be expedited if defendant were to deal directly with the Newtons as plaintiff's assignee under the Newton contract, and thereby avoid a three-party arrangement. Plaintiff testified:

"A   I could come up with the money, but if I had paid the $10,000 [to the Newtons] I would have to get it 10 days later from Jack [defendant], so for — for just getting my costs out of it I just asked him if he would do it instead of me and he said he would."

After some negotiations, plaintiff signed the following document which had been prepared by defendant on stationery of the Newtons' agent, Bauer & Assoc. Realtors:

"November 13, 1973

"Title Insurance Co.
421 SW Fourth St.
Portland, Oregon

"Attn: Shirley Langoe

---

[1] The difference between this price and the Newton contract price is $2,500, the amount which plaintiff claims as his "costs" in the property as of October 20, 1973. Plaintiff claims this did not include the $500 he paid the Newtons as earnest money.

"Dear Mrs. Langoe:

"This letter will serve as a notice to you that *I have assigned all my interest* including earnest money deposited with the Broker in the amount of $500.00, *to Jack Baumach* [sic], on the sale of property known as 3320 SW Beaverton Hillsdale Hwy.

"Purchase agreement between myself and the sellers, W. Newton and Adelaide B. Newton dated March 26, 1973.

"Sincerely,

"/s/ Ron Engesether" (Emphasis added.)

The validity of the assignment is not an issue in this case.

As part of the assignment, defendant paid plaintiff $500, the amount of plaintiff's earnest money on the Newton contract. Plaintiff retained possession of the $2,500 note.

Thereafter, defendant proceeded to "take over the position that Mr. Engesether was in on [the Newton contract]" and purchased the property directly from the Newtons as plaintiff's assignee.[2]

The defendant's affirmative defenses concern the legal effect of the negotiations and assignment of Engesether to Baunach dated November 13, 1973. Defendant contends that he was relieved of his obligations under the Baunach-Engesether contract, including his promise to pay plaintiff $2,500 as a result of plaintiff's assignment. Plaintiff testified:

"A * * * This was a release of the $500 that I paid as a deposit to the Newtons. And he assumed the $500 that I paid and returned—returned the $500 check for the 500 earnest money that I paid, *but knowing—I still assumed I was going to get my $2500 after he started construction.*" (Emphasis added.)

There was no request for specific findings but after both parties rested the trial court ruled:

"THE COURT: If you read these [earnest money con-

---

[2] In fact, the defendant sold his interest to his partner, Warlick, who completed the transaction and constructed the apartment house on the property described in the Newton contract.

tracts and assignment of November 13, 1973] very carefully, Mr. Albrecht, for instance the letter of the 13th to the Title Insurance Co., merely clearing Mr. Engesether out of here. And in reading the—all of the other exhibits I am satisfied that plaintiff is entitled to his verdict.

"I think that he had his expenses in it, which represents the difference. I will allow a verdict for the plaintiff * * *."

In *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971), we stated:

"As a general rule, the construction of a contract is a question for the court and is treated as a matter of law. [Citations omitted.] Under certain circumstances, however, there will be questions for the finder of fact in connection with the construction process. * * *"

*See Rolfe v. N. W. Cattle & Resources, Inc.*, 260 Or 590, 600, 491 P2d 195 (1971).

Here, the agreements between the parties were ambiguous. The court had the dual responsibility of weighing the facts and credibility of witnesses and construing the contracts as a matter of law. We conclude that the trial court did not err in either instance.

It is beyond doubt that the parties achieved their intended goals. Defendant, through his partner, Warlick, purchased the subject property as plaintiff's assignee and constructed an apartment building thereon. It is undisputed that plaintiff and defendant had agreed that plaintiff would be paid his "costs," estimated at $2,500. No profit would accrue to plaintiff. There is evidence that the promissory note represents the amount which defendant promised to pay plaintiff as "costs." The assignment dated November 13, 1973, including payment of plaintiff's $500 earnest money, was prepared by the defendant and executed by plaintiff after defendant was aware of all of the facts surrounding the entire transaction. The trial court was required to give effect to the intentions of the parties if possible. *Bauman v. Bauman*, 245 Or 574, 577, 423 P2d 181 (1967); *Dean Vincent v. Chef*

*Joe's,* 273 Or 814, 541 P2d 469 (1975).

Defendant also argues that plaintiff represented that an 18-unit apartment building could be erected on the building lot when in fact it was large enough to construct only a 17-unit apartment building. However, there is evidence from which the court could have found that plaintiff did not misrepresent any material fact intentionally or innocently.

Defendant had seen and read plaintiff's copy of the Newton contract before executing the Baunach-Engesether contract and the November 13, 1973, assignment. The Newton contract clearly states that the property may not be large enough on which to erect an 18-unit apartment house because of an existing encroachment. "Buyer is aware of existing encroachment on East side of property and requires survey * * *." There is also evidence that the building lot was large enough for a 17-unit apartment and a recreational room and that defendant or his partner, Warlick, could have petitioned for a variance to build an 18-unit apartment building but failed to do so.

For all of the above reasons, we conclude that there was sufficient evidence to support the trial court's finding that defendant was liable to plaintiff on the promissory note alleged in the complaint.

Affirmed.